# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

WALTER J. BENNETT,              )
                                )
     Plaintiff,              )
                                )
v.                              )    Civil Action No. 3:12CV34—HEH
                                )
BANK OF AMERICA, N.A., *et al.*,  )
                                )
                                )
     Defendants.             )

## MEMORANDUM OPINION

Former homeowner, Walter J. Bennett ("Plaintiff" or "Bennett"), brings this action

against Bank of America, N.A. ("BANA") and the Professional Foreclosure Corporation of

Virginia ("PFC") in an attempt to unwind the foreclosure sale of his home. After Plaintiff

initially filed suit in the Circuit Court of Hanover County, Virginia, BANA timely removed

to this Court on the basis of diversity jurisdiction. On January 20 and 24, 2012,

respectively, BANA and PFC filed motions to dismiss pursuant to Rule 12(b)(6). On

February 11, Plaintiff filed a motion to remand this case to state court for a lack of federal

subject-matter jurisdiction. All motions are now ripe for decision. For the reasons set forth

herein, Plaintiff's request for remand will be denied, and Defendants' motions to dismiss

will be granted in part and denied in part.

## I. BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court

assumes Plaintiff's well-pleaded allegations to be true, and views all facts in the light most

favorable to Plaintiff. *See Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Plaintiff's Complaint contains the following factual allegations.

Bennett entered into the home loan underlying this matter with Guaranty Residential, who assigned the loan to Countrywide Document Custody Services ("Countrywide"), on December 8, 2004.  In August 2008, facing financial difficulties, Bennett contacted Countrywide—which later merged into and became BANA—seeking some form of loan modification or forbearance.  A Countrywide service representative advised him that the company had programs to assist distressed borrowers, but that only those homeowners defaulting on their mortgages would qualify.  Relying on these allegedly deceptive representations, Bennett stopped paying his mortgage.

In early 2009, notwithstanding assurances to the contrary, Countrywide scheduled a foreclosure sale of Bennett's home.  Bennett managed to avoid foreclosure, however, by arranging a short sale.  Shortly thereafter, he contacted Countrywide regarding the Home Affordable Modification Program ("HAMP"), a federal program designed to help financially struggling homeowners avert foreclosure by modifying loans to a more affordable level.  Bennett alleges that Countrywide encouraged him to cancel his short sale and to continue withholding mortgage payments.  He initially did so, but later withdrew his HAMP application in November 2009 and again began pursuing a short sale.  In the meantime, BANA started managing Bennett's loan in its own name.

Bennett claims that on June 9, 2009, PFC mailed him a "bogus" document purporting to appoint PFC as substitute trustee.  More precisely, he alleges that "the first page of [the appointment document] was not attached to the second page ... and was not associated with

2

the second page ... when the second page [of the document] was signed and notarized and was not in the same locale or locality as the second page of [the document] when [it] was signed." (Compl. ¶ 128.) Plaintiff therefore asserts that PFC was not in fact appointed as substitute trustee, and that PFC and BANA both engaged in fraud by colluding to make it appear as though PFC had been properly appointed.

BANA offered Bennett a loan modification in February 2010, along with a proposal deed in lieu of foreclosure in March 2010.  Bennett rejected both offers and proceeded with the short sale.  All the while, he did not pay his mortgage.

At BANA's instruction, PFC scheduled a foreclosure sale of Bennett's home for June 24, 2010.  Plaintiff alleges that BANA assured him his short sale had been approved and that BANA would cancel the foreclosure sale.  At the same time, PFC indicated that they were proceeding with foreclosure.  Bennett contacted BANA every day from June 21-23, and each time was told that BANA had approved the short sale and would stop the foreclosure.  Nonetheless, PFC foreclosed on Bennett's property on June 24, 2010.

Based on the foregoing, Bennett filed suit in the Circuit Court of Hanover County on November 22, 2011, asserting five causes of action against BANA and PFC: (1) breach of the explicit covenant in the home's deed of trust providing that the lender could accelerate the note only after giving 30-day notice of default; (2) fraud; (3) trespass; (4) premature purported foreclosure and invalid purported trustee's deed; and (5) breach of the implied covenant of good faith and fair dealing.  BANA then timely removed to this Court on the basis of diversity jurisdiction.

Both Defendants subsequently filed motions to dismiss, and Plaintiff filed a motion

to remand for lack of federal jurisdiction. Because it concerns a threshold jurisdictional

issue, the request for remand will be considered first. Finding that it has subject-matter

jurisdiction over this matter, the Court will then address Defendants' motions for dismissal.

## I. MOTION TO REMAND

A defendant may remove a state-court action to federal court if the suit could have

been filed originally in federal court—that is, if no plaintiff and defendant share the same

state citizenship, and the amount in controversy exceeds $75,000.[1] 28 U.S.C. § 1441(b); *see*

*also Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). Given the "significant

federalism concerns" that arise, however, removal jurisdiction must be strictly construed.

*Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 138, 151 (4th Cir. 1994). Therefore,

the burden is on the removing party to demonstrate that federal jurisdiction exists. *See Md.*

*Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260 (4th Cir. 2005). And "if federal

jurisdiction is doubtful, a remand to state court is necessary." *Id.* (internal quotation marks

omitted); *see also* Fed. R. Civ. P. 12(h)(3) (requiring the court to "dismiss the action" if it

determines at any time that it lacks jurisdiction).

Even where complete diversity is absent from the face of a complaint, removal may

be permissible if the non-diverse defendant is a mere nominal party, *see Navarro Sav. Ass'n*

*v. Lee*, 446 U.S. 458, 460-61 (1980) ("[A] federal court must disregard nominal or formal

parties and rest jurisdiction only upon the citizenship of real parties to the controversy."), or

under the rule of fraudulent joinder. This latter doctrine allows the court "to disregard, for

---

1. Plaintiff has not asserted any claim arising under federal law. *Bennett v. Bank of Am.,*
*N.A.*, No. 3:11CV3, 2011 WL 1814963 (E.D. Va. May 11, 2011).

jurisdictional purposes, the citizenship of certain non-diverse defendants, assume

jurisdiction over a case, dismiss the non-diverse defendants, and thereby retain jurisdiction."

*Mayes*, 196 F.3d at 461. In this case, although Plaintiff and Defendant PFC share a Virginia

domicile,[2] BANA contends that PFC's citizenship should be disregarded for jurisdictional

purposes because PFC either was fraudulently joined or is a mere nominal party.

## A.    Fraudulent Joinder

In order to satisfy the fraudulent joinder exception, the party seeking removal bears

the "heavy" burden of demonstrating "that there is *no possibility* that the plaintiff would be

able to establish a cause of action against the in-state defendant." *Id.* at 464; *see also AIDS*

*Counseling & Testing Cents. v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir.

1990). In assessing a claim of fraudulent joinder, the court may "consider the entire record,

and determine the basis of joinder by any means available." *Mayes*, 198 F.3d at 464

(quotation marks omitted). Further, the court must resolve all legal and factual disputes in

the plaintiff's favor. *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232-33 (4th Cir. 1993).

As the Fourth Circuit has made clear, this standard "is even more favorable to the plaintiff

than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Mayes*,

198 F.3d at 424. Thus, if the plaintiff has even "a slight possibility of a right to relief," the

case should be remanded. *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999).

Courts in this district have applied this rule in cases involving substitute trustees. In

*Sherman v. Litton Loan Servicing, L.P.*, 796 F. Supp. 2d 753 (E.D. Va. 2011), for example,

the court considered "whether the citizenship of a substitute trustee is properly taken into

account in determining whether complete diversity of citizenship among the parties exists."

---

[2] BANA is a North Carolina citizen for purposes of diversity jurisdiction.

5

*Id.* at 759-60. Synthesizing a host of cases addressing the issue, the court concluded "that the status of a substitute trustee hinges on the nature of the actions allegedly taken by the trustee, if any, and the type of relief sought against the trustee, if any." *Id.* at 760. That framework governs this Court's analysis here.

In the immediate case, Plaintiff makes one substantive allegation against PFC: that PFC mailed Bennett a "bogus document" appearing to appoint PFC as substitute trustee.[3] According to the Complaint, the appointment was "bogus" because the second page of the document was signed and notarized while disassociated from the first page; in fact, the first page was allegedly in a different location altogether. Relying on these facts, Plaintiff asserts that PFC was not appointed as substitute trustee, and that PFC and BANA engaged in fraud by "working together" to make it appear otherwise.

Plaintiff does not allege, nor do the exhibits attached to his Complaint demonstrate, that PFC ever signed the purportedly "bogus document." Nor is there any plausible indication PFC knew that the document had been improperly executed. Rather, Plaintiff simply asserts conclusorily that PFC "work[ed] together" and "participated" with BANA to defraud him. (Compl. ¶¶ 130, 131.) These are not factual allegations, and thus need not be taken as true. *See Iqbal,* 556 U.S. at 679. In short, the question is whether a substitute trustee's single act of mailing an improperly executed appointment document gives rise to a viable claim under Virginia law. It does not.

---

3. Plaintiff alleges that PFC took other actions in order to complete the foreclosure sale, such as advertising and actually conducting the sale, but PFC was functioning solely as BANA's agent in doing so. Accordingly, such actions do not establish a claim against PFC or factor into the fraudulent joinder analysis. *See Wygal v. Litton Loan Servicing LP,* No. 5:09CV322, 2009 WL 2524701, *8 (S.D. W. Va. Aug. 18, 2009). Other than the conclusory assertion that PFC "work[ed] with" BANA to commit fraud, Plaintiff does not assert that PFC violated its fiduciary duty of impartiality when taking these actions.

A recent Virginia Supreme Court decision supports this conclusion. *Silva v. Bank of New York Mellon*, No. 111999 (Va. Feb. 22, 2012). The complaint in *Silva* was filed by Plaintiff's counsel in the case at bar, against PFC and other defendants. As here, the portion of the complaint in *Silva* regarding the appointment of PFC as substitute trustee alleged that the document was "bogus," because "the first page of [the document] was not attached to the second page ... when the second page ... was signed."[4] Finding the mere act of mailing an unduly executed document not to create a right to relief, the trial court dismissed the complaint against all defendants. *Id.* In denying certiorari, the Supreme Court reviewed the record and found "no reversible error in the judgment." *Id.*

In view of the Supreme Court's disposition in *Silva*, and since the sole substantive allegation at bar is that PFC mailed an improperly executed document, this Court concludes "that there is *no possibility* that [Plaintiff] would be able to establish a cause of action against [PFC,] the in-state defendant." *Mayes*, 196 F.3d at 461.

## B.   Nominal Party Status

Defendants also argue that PFC is a nominal party. A "nominal party" is one that is "part of a suit only as the holder of assets that must be recorded in order to afford complete relief; no cause of action is asserted against a nominal defendant." *Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 192 (4th Cir. 2002). "[A]lthough the Fourth Circuit has not yet explicitly articulated a test for determining whether a party is 'nominal' or 'formal,' other courts have regarded the standard as being

---

4. Plaintiff argues that *Williams v. HSBC Finance Corporation*, No. CL 10-877 (Va. Cir. Ct. Mar. 30, 2011), demonstrates that if the pages of a document appointing a substitute trustee are not associated when signed, then a claim can succeed. But *Williams* declined to dismiss a claim *against a bank* that improperly executed an appointment document. Likewise, any fraud in PFC's appointment in this case was perpetrated only by the lender—not the substitute trustee itself.

essentially the same as that for fraudulent or improper joinder." *Sherman*, 796 F. Supp. 2d at 761. Accordingly, the foregoing fraudulent joinder analysis counsels this Court's assessment of PFC as a nominal party. Moreover, because Plaintiff does not allege that PFC is the holder of any disputed deeds or any subject matter of this litigation, PFC's presence in this case is not essential.

As Plaintiff clearly cannot prevail against PFC, this Court finds that PFC was fraudulently joined. The Court further concludes that PFC is a nominal party. PFC will therefore be dismissed from this action and Plaintiff's motion to remand will be denied.

### III. BANA'S MOTION TO DISMISS[5]

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint.... [I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

---

[5] For the reasons set forth in the Court's analysis of Plaintiff's motion to remand, Defendant PFC's motion to dismiss will be granted, and PFC will be dismissed from this case.

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950; *see also Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Generally, the district court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6). The court may, however, consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006).

## A.    Count One – Breach of Explicit Covenant

BANA argues that Count One, alleging breach of the explicit notice provision in the parties' Deed of Trust, should be dismissed because Plaintiff committed two separate *prior* material breaches. Under Virginia law, a party who first materially breaches a contract cannot enforce that contract. *Horton v. Horton*, 487 S.E.2d 200, 203 (Va. 1997). "A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Id.* at 204. But, a court may rule on such an affirmative defense at the 12(b)(6) stage only "if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'"

9

*Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond,*

*Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

BANA's chief affirmative defense is that Plaintiff breached first by not sending

written notice before commencing this action, as required by the Deed of Trust. As BANA

rightly points out, however, the Complaint does not indicate whether Bennett did, or did not,

send such requisite notice. (BANA's Mot. Dismiss at 4-5.) Because the Complaint is silent

as to this essential fact, the Court cannot address BANA's contention at this time. Rather,

this defense is "more properly reserved for consideration on a motion for summary

judgment." *Forst*, 4 F.3d at 250.

BANA next argues that Plaintiff committed the initial breach by falling into arrears

on his mortgage payments. Indeed, the Complaint explicitly states that Plaintiff defaulted

on his payment obligations. (Compl. ¶¶ 43, 50, 66, 90, 109.) As this is the only fact

necessary to rule on such an affirmative defense, and because it appears on the face of the

Complaint, the Court may rule at this time.

In support of its assertion that Plaintiff's default constitutes a material breach, BANA

directs the Court to a Virginia Circuit Court decision that dismissed a similar action.[6]

Plaintiff, on the other hand, relies upon *Bayview Loan Servicing v. Simmons*, 654 S.E.2d 898

(Va. 2008), a controlling case in which the Virginia Supreme Court enforced the terms of a

deed of trust against a lender even after the borrower had defaulted. *Id.* at 901-02. *Bayview*

stands for the proposition that a borrower's default does not discharge a lender's post-

---

6. Although the court in *Matthews v. PHH Mortgage Corp.*, 82 Va. Cir. 139 (2011), found default to be a material breach excusing post-default obligations, the Supreme Court's decision to the contrary in *Bayview* is controlling. However, the Virginia Supreme Court recently granted *certiorari* in *Matthews*. Should the Court affirm the lower court's decision, BANA is free to renew its material-breach defense at the summary judgment stage.

default contractual obligations. Here, therefore, "the fact that the contract specifically contemplates [Bennett] falling into arrears by imposing obligations on [BANA] to do certain things in the event of arrearage prior to commencing foreclosure ... suggests that simply falling into arrears on the note is not a material breach." *Kersey v. PHH Mortgage Corp.*, 682 F. Supp. 2d 588, 597 (E.D. Va. 2010) (vacated on other grounds).

BANA also asserts that Plaintiff failed to state a claim for breach of the Deed of Trust because, according to the Complaint, BANA complied with Virginia Code § 55-59.1. Under that statute, a lender's acceleration notice is "deemed an effective exercise [of its] right of acceleration contained in [the] [D]eed of [T]rust." Va. Code § 55-59.1. In *Bayview*, however, the Supreme Court distinguished between statutorily and contractually mandated notice. Specifically, the Court highlighted the express condition in the deed of trust at issue that the "[l]ender *prior to acceleration* ... give notice to [the] [b]orrower as provided in paragraph 12 hereof." 654 S.E.2d at 901. Paragraph 12, in turn, imposed additional requirements not contained in § 55-59.1. *Id.* at 902. The Supreme Court held that § 55-59.1 did not supersede these contract provisions, and deemed them valid preconditions to the lender's exercise of its acceleration rights.

As in *Bayview*, the immediate Deed of Trust contains "prior to" acceleration language and provides requirements that go beyond those set out in § 55-59.1. (Compl. ¶ 12.) Section 55-59.1, therefore, does not excuse BANA from sending notice as required by contract. Further, although Plaintiff admits having received a pre-acceleration notice (*id.* ¶ 18, Ex. D), the Complaint asserts that the notice was insufficient under the Deed of Trust because, among other things, it did not give Plaintiff sufficient time to avoid acceleration.

11

(Comp. ¶ 19.) Plaintiff has therefore alleged facts that, if proven, may demonstrate that BANA failed to send proper pre-acceleration notice. This raises a factual dispute that must be reserved for summary judgment. Accordingly, BANA's Motion to Dismiss as to Count One must be denied.

**B.      Counts Two & Four – Fraud**

Under Virginia law, a claim for actual fraud requires "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, [and] (5) reliance by the party misled, … (6) resulting [in] damage to [that] party." *State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005) (citation omitted). In general, "if a defendant makes a promise that, when made, he has no intention of performing, that promise is considered a misrepresentation of present fact and may form the basis for a claim of actual fraud." *SuperValu, Inc. v. Johnson*, 666 S.E.2d 335, 342 (Va. 2008). However, the plaintiff must clearly allege that the promisor did not intend to perform the promise *at the time* the promisor made the purportedly fraudulent statement. *Station # 2, LLC v. Lynch*, 695 S.E.2d 537, 540 (Va. 2010).

Federal Rule of Civil Procedure 9(b) subjects fraud claims to a heightened pleading standard. Specifically, a party alleging fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Such "circumstances" include "the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal citations omitted). Notably, Rule 9(b) explicitly excuses a party from pleading fraudulent intent

under an elevated pleading standard.  Still, the plaintiff's allegations must be sufficient to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678, 686-87.  "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n. 5 (4th Cir. 1999).

### 1. Plaintiff Does Not State a Viable Claim as to BANA's Representation that It Appointed PFC as Substitute Trustee

Counts Two and Four of Plaintiff Complaint pertain to BANA's appointment of PFC as substitute trustee.  In Count Two, Plaintiff claims that BANA defrauded him by representing that PFC had been validly appointed; Count Four asserts that PFC's appointment was invalid.  Because Plaintiff must allege a *false* representation in order to state a claim for fraud, the Court first considers the allegations underlying Count Four.

### a. Count Four Does Not Allege Sufficient Facts to Undermine PFC's Appointment as Substitute Trustee

The thrust of Plaintiff's claim in Count Four is that PFC's appointment was invalid.  This claim must fail for two reasons.  First, Plaintiff does not have standing to challenge the validity of the appointment.  And second, even if Plaintiff had standing, he has not pled facts sufficient to undermine the appointment.

As an initial matter, because Plaintiff was not a party to the document appointing PFC, he lacks standing to challenge the validity of the appointment.  BANA appointed PFC as substitute trustee and the lender's counsel prepared the document; Bennett had no direct involvement.  (*See* PFC's Mem. Supp. Mot. Dismiss. Ex. A; Compl. Exs. K, M, N.)[7]  The

---

7. The Court may consider the appointment document without converting this 12(b)(6) motion into a motion for summary judgment because it was referenced in the Complaint and is

intentions of the grantor, BANA, could not be clearer: BANA wished to appoint PFC to sell

Bennett's property at foreclosure. Plaintiff does not allege that the document was altered

after delivery to PFC or that it misrepresents the intentions of either party.

Plaintiff also does not allege any particular way in which the method used to execute

the documents harmed him. As one court explained, the "[b]orrower certainly has an

interest in avoiding foreclosure. But the validity of the assignment does not affect *whether*

[a] [b]orrower owes its obligations, but only *to whom* [a] [b]orrower is obligated." *Livonia

Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C.*, 2010 U.S. Dist.

LEXIS 47595, *23-24 (E.D. Mich. May 13, 2010); *see also Bridge v. Aames Capital Corp.*,

2010 U.S. Dist. LEXIS 103154 (N.D. Ohio Sept. 28, 2010). That principle forecloses

Plaintiff's claim here.

Moreover, even if Plaintiff had standing, he has not alleged facts sufficient to

undermine the validity of the appointment. The reasoning in a recent Virginia federal case,

*Wolf v. Fannie Mae*, No. 3:11CV25, 2011 WL 5881764 (W.D. Va. Nov. 23, 2011), proves

helpful here. Facing facts and claims nearly identical to the ones at issue in this matter, the

court in *Wolf* rejected the plaintiff's challenge to the substitute trustee's appointment and

determined that he had not alleged a viable fraud claim. *Id.* at *8-10; *see also Silva v. Bank

of N.Y. Melon*, No. CL11-455 (Va. Cir. July 27, 2011) (finding that similar facts "fail[ed] to

... undermine the appointment of the trustees or foreclosure sale"), *cert. denied Silva*,

111999. Of particular note, the court found that procedural irregularities in the mortgage

documents in question did not undermine the legal validity of those documents. *Wolf*, 2011

---

available in the public records, and its authenticity is undisputed. *See Whitthohn v. Fed. Ins. Co.*,
164 Fed. Appx. 395, 396-97 (4th Cir. 2006).

WL 5881764 at *8-10; *see also In Re: Mortgage Electronic Registration Systems (MERS) Litigations*, 2011 U.S. Dist. LEXIS 117107 at *40 (D. Ariz. Oct. 3, 2011) (finding alleged "robosigning" not to undermine substitute trustee's appointment).

In *Wolf*, the plaintiff alleged that the first and second pages of the document appointing PFC as substitute trustee were not attached when signed. As the court observed, however, the plaintiff had "not allege[d] that the signature on the second page was forged or that the document taken as a whole misrepresented the intentions of either BAC or PFC." 2011 WL 5881764 at *8. Nor did the plaintiff "allege a factual basis for her otherwise unsubstantiated assertion" that when the second page was signed, "it was a one page document, not associated with anything else." *Id.* Further, the plaintiff in *Wolf* could not identify any legal authority for the notion that Virginia law requires "the instrument of appointment to be completely intact when it is executed," *id.*, and Plaintiff does not do so here. The district court thus deemed the plaintiff's claims inadequate. This Court finds *Wolf*'s reasoning persuasive.

In an attempt to distinguish *Wolf*, Plaintiff points to his allegation that the two pages of the instant appointment document were in different locations when signed. The Court does not find this additional fact significant. Although *Wolf* suggested that the "allegation ... that the two pages of a notarized document were not executed in the same place at the same time, [may] call[] into question whether the document had been executed personally in front of the notary," this is not enough to survive a motion to dismiss. *Id.* As the separation of the pages is the only factual component of Plaintiff's claim for the "bogus" appointment of

15

PFC, Plaintiff has failed to undermine the appointment and his claim in Count Four,

"Invalid Purported Trustees Deed and Premature Purported Foreclosure," will be dismissed.

**b.   Count Two Does Not State a Plausible Claim for Fraud Related to Representations Relating to the Appointment**

Plaintiff further alleges that BANA and PFC defrauded him by presenting PFC's

appointment as valid. This claim, too, fails for several reasons. Most obviously, because

Plaintiff has not plausibly alleged that PFC's appointment was invalid in the first instance,

Plaintiff has not pled facts from which the Court can reasonably infer the first element of

fraud—a false representation.

Second, even if the appointment were technically deficient, Plaintiff has not alleged

facts which reasonably demonstrate that BANA misrepresented a *material* fact with the

*intent* to mislead. *Wolf* is again instructive. In that case, the court found that any

misrepresentation by the lending bank was neither material nor intended to mislead because

"[t]he document appointing PFC as substitute trustee, regardless of whether its pages were

attached when it was executed, captured the intent of both [the bank] and PFC to be bound

by it. In other words, both [the bank] and PFC wanted PFC to take [over] as trustee." *Wolf*,

2011 WL 5881764 at *10. The same is true here. Therefore, this Court will dismiss the

portion of Count Two claiming that BANA defrauded Plaintiff by misrepresenting PFC's

appointment as substitute trustee.

**2.   Count Two States a Plausible Claim for Misrepresentations as to the Approval of a Short Sale and the Cancellation of Foreclosure**

Also in Count Two, Plaintiff claims that BANA defrauded him by falsely

representing, with the intent to mislead, that it had approved Plaintiff's short sale and would

cancel the foreclosure. (Compl. ¶¶ 141-185.) Plaintiff further asserts that he relied on those representations to his detriment by not filing suit, which could have halted the foreclosure. (*Id.*) BANA argues, however, that Plaintiff's fraud claim is barred by Virginia's Economic Loss Rule, the statute of frauds, and "longstanding Virginia law."

As the Virginia Supreme Court has made clear, a single act may support a cause of action for both breach of contract and tort. *Foreign Mission Bd. v. Wade*, 409 S.E.2d 144, 148 (Va. 1991) (citation omitted). "To avoid turning every breach of contract into a tort," however, the Economic Loss Rule provides that, "in order to recover in tort, 'the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'" *Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 293 (Va. 2007) (citation omitted); *see also Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998) (holding that, where "each particular misrepresentation by [the defendant] related to a duty or an obligation that was specifically required by the [parties'] contract" and the "source of any duty breached was 'solely' that contract," the plaintiff's claims sounded in contract only). BANA argues that the Economic Loss Rule bars Plaintiff's claim for fraud.

BANA's reliance on Virginia's Economic Loss Rule is misplaced. BANA did not have a contractual duty to approve the short sale and cancel the foreclosure of Plaintiff's home. (*See* Compl. Ex. B.) Thus, this is not a case in which no cause of action would exist but for the violation of contractual duties between the parties. Instead, the cause of action at hand stems purely from the duties imposed by the common law of fraud. *Accord Abi-Najm v. Concord Condominium, LLC*, 699 S.E.2d 483, 490 (Va. 2010). Because the duty which

17

Defendant allegedly breached cannot find its source in the parties' contract, Plaintiff's tort claim is not barred by the Virginia Economic Loss Rule.

BANA also maintains that its communications created a unilateral oral contract, and that enforcement of the contract should be barred by the statute of frauds and fail for lack of consideration. These arguments have no bearing on Plaintiff's fraud claim. *See Albayero v. Wells Fargo Bank, N.A.*, 2011 WL 4748341 (E.D. Va. Oct. 5, 2011) (declining to dismiss fraud claim, but dismissing breach of contract claim where plaintiff alleged that an agent told him, with the intent to mislead, that it would not foreclose on his home if he paid $8,000 by the next day, but the bank foreclosed after the plaintiff made the payment). Finding Defendant's arguments unavailing, the Court will not dismiss Plaintiff's claim in Count Two that BANA defrauded him by misrepresenting its short-sale approval and foreclosure cancellation.

## C.     Count Three – Trespass

In Count Three, Plaintiff asserts a claim for trespass. Under Virginia law, "[a] trespass is an unauthorized entry onto property which results in interference with the property owner's possessory interest therein." *Cooper v. Horn*, 448 S.E.2d 403, 406 (Va. 1994). Here, BANA was contractually "authorized" to enter onto the property in order to "change locks" only if the borrower "fail[ed] to perform the covenants and agreements contained" in the Deed of Trust. (Compl. Ex. B, ¶ 9.)

Critically, Plaintiff concedes in his Complaint he did not make monthly mortgage payments as required by the Deed of Trust. (*See id.* ¶¶ 43, 50, 66, 90, 109.) Under the terms of the parties' agreement, this failure triggered the lender's right to enter Bennett's

property. Because BANA was thus acting within the scope of its contractual rights, Plaintiff's trespass claim is unsustainable as a matter of law.

## D.      Count Five – Breach of Implied Covenant of Good Faith and Fair Dealing

In his fifth and final count, Plaintiff claims that BANA breached the implied covenant of good faith and fair dealing. Although "Virginia law recognizes an implied covenant of good faith and fair dealing in certain contracts..., no implied duty arises with respect to activity governed by express contractual terms." *Skillstorm, Inc. v. Electronic Data Systems, LLC*, 666 F. Supp. 2d 610, 620 (E.D. Va. 2009) (citing *Ward's Equip. v. New Holland N. Am.*, 493 S.E.2d 516, 520 (1997)). Thus, "when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." *Ward's Equip., Inc.*, 493 S.E.2d at 520; *see also Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 385 (Va. 1996); *Albright v. Burke & Herbert Bank & Trust Co.*, 457 S.E.2d 776, 778 (Va. 1995). But while "the duty of good faith does not prevent a party from exercising its explicit contractual *rights*, a party may not exercise contractual *discretion* in bad faith." *Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 542 (4th Cir. 1998).

The allegations underlying Plaintiff's claim in Count Five are identical to those supporting his other causes of action, and pertain solely to BANA's exercise of its contractual rights. (*See* Compl. ¶ 196, Ex. B.) Plaintiff does not allege that BANA took any actions from which the Court might reasonably infer that BANA "exercise[d] its contractual *discretion* in bad faith." *Id.*; *see also Albayero*, 2011 WL 4748341, *6. Accordingly,

19

Plaintiff's stand-alone implied covenant claim must fail, and BANA's motion to dismiss will be granted as to Count Five.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's Motion to Remand and grant PFC's Motion to Dismiss as to all claims against PFC. BANA's Motion to Dismiss will be granted in part and denied in part. Specifically, the Motion will be denied as to Count One and the portion of Count Two alleging misrepresentation concerning the short-sale cancelled foreclosure of Plaintiff's home, and granted as to the remaining portions of Count Two and Counts Three, Four, and Five. Consequently, only Plaintiff's claims against BANA in Count One and part of Count Two will remain.

An appropriate Order will accompany this Memorandum Opinion.

_____ /s/
Henry E. Hudson
United States District Judge

Date: April 18, 2012
Richmond, VA

20